## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

WILLIAMS OWENS, )
)
     Plaintiff, )
)
     v. )     Case No. 2:17-CV-79-RLW
)
NANCY A. BERRYHILL, )
ACTING COMMISSIONER OF SOCIAL )
SECURITY, )
)
     Defendant. )
)

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of

Social Security's final decision denying the application of Williams Owens ("Owens") for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act.

## I.    **Background**

On January 21, 2016, Owens filed applications for DIB and SSI. On April 15, 2016,

Defendant issued a Notice of Disapproved Claims. On June 9, 2016, Owens filed a Request for

Hearing by Administrative Law Judge (ALJ). The SSA granted Owens' request, and a hearing

was held on March 28, 2017. The ALJ issued a written decision on April 7, 2017, upholding the

denial of benefits. On May 30, 2017, Owens filed a timely Request for Review of Hearing

Decision with the Appeals Council. On September 15, 2017, the Appeals Council denied Owens'

Request for Review. The decision of the ALJ thus stands as the final decision of the

Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Owens filed this appeal on

November 13, 2017. (ECF No. 1). Owens filed a Brief in Support of his Complaint on April 22,

2018. (ECF No. 16). The Commissioner filed a Brief in Support of the Answer on July 20, 2018. (ECF No. 21).

## II.    Decision of the ALJ

The ALJ found that Owens had the following severe impairments:    degenerative disc disease of the cervical spine and lumbar spine; ankylosing spondylitis; mild neurocognitive disorder, secondary to traumatic brain injury; chronic pain syndrome; history of vertigo; anxiety; and depression. (Tr. 16). The ALJ, however, determined that Owens did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 16). The ALJ found that Owens had the residual functional capacity ("RFC") to perform medium work, as defined in 20 CFR 404.1567(c) and 416.967(c), except he could occasionally reach overhead with the right arm and the left arm. Owens could never climb ladders, ropes, or scaffolds. He could occasionally stoop, kneel, and crawl, but should never be exposed to unprotected heights or moving, mechanical parts. Owens could never operate a motor vehicle as a job duty. He was limited to simple, routine tasks and simple work decisions. Owens could only occasionally work with supervisors and coworkers but could never work with the public. (Tr. 19). The ALJ found that Owens' impairments would not preclude him from performing work that exists in significant numbers of the national economy, including work as a kitchen helper, laundry laborer, and stubber. (Tr. 24-25). In sum, the ALJ determined that Owens was not disabled. (Tr. 25).

## III.    Administrative Record

The following is a summary of relevant evidence before the ALJ.

### A.    Hearing Testimony

Owens testified on March 28, 2017, as follows:

Owens was 55 years old at the date of the hearing. (Tr. 25). He testified he had a head and neck injury on February 6, 2015, when a colleague threw a barrel at his head during his employment at General Mills. As a result, Owens is in constant pain and has significant memory loss. (Tr. 35-36). He has problems swallowing and his eyes will not focus. (Tr. 36). Owens says his depression increased since his head injury. (Tr. 36). He has a lot of anger, cannot sleep, and displays pseudobulbar affect (sudden crying). (Tr. 37).[1] He has seizure-like episodes where he does not remember things. (Tr. 37-38). He has these episodes once or twice a month. (Tr. 38). He gets pain in his neck, upper middle back, and head (including eyes). (Tr. 39). He has numbness in his left hand daily. (Tr. 39). He has carpal tunnel in his right hand. (Tr. 40).

Owens can trim his beard; he has difficulty buttoning buttons at the top or at the cuff of a shirt. (Tr. 40). He does not cook. (Tr. 41). He has no difficulty taking a bath or shower. (Tr. 41). He has difficulty with his hands hurting and dropping things. (Tr. 41). He typically spends all day on the floor or in a recliner with his heating pad. (Tr. 46). He applies heat to try to "loosen things up." (Tr. 47). The pain in his head feels like a lot of pressure, as if someone is choking him. (Tr. 48). The pain in his neck and low back never goes away. (Tr. 48). He must use heating pad and painkillers for that pain.

His pain causes memory loss. (Tr. 49). He cannot read anything because his eyes cannot concentrate anymore. (Tr. 50). He has trouble remembering if he watched television shows. (Tr. 50). He tries to do the wash, but has to sit on the floor because he cannot bend over. (Tr. 50). He is never without pain. (Tr. 51). He sleeps only when he takes twice the dose of painkillers. (Tr. 51). He wakes up around 7:30 a.m. (Tr. 51). In the morning, he does not feel rested, instead he feels tired and drugged out. (Tr. 51). He lines up and takes his medications for the

---

[1] https://www.mayoclinic.org/diseases-conditions/pseudobulbar-affect/symptoms-causes/syc-20353737

day. (Tr. 51-52). He does not do anything all day, except lie on the floor. His wife or his mother prepares all of his meals. (Tr. 52-53). He does not cook because he does not feel like cooking. He watches TV but cannot walk across a store without his feet and knees hurting. (Tr. 41-42). He has not participated in any hobbies since his accident. (Tr. 53). His feet feel like they are on fire. A side effect of his pain medication is that he cannot sleep at night. (Tr. 43). He also takes muscle relaxers, anti-inflammatories, and painkillers for his joint pain. (Tr. 43).

Owens worked at General Mills from November to February as a "backup" worker for any employee who was absent. (Tr. 44). Owens was hit on the head at his job at General Mills but went back the following day to see the workers' compensation doctor. (Tr. 43-44). He was off for three months, but was unable to return to work because of his memory problems. (Tr. 44). Prior to General Mills, Owens worked for the Postal Service, on a part-time basis, putting the mail up and delivering it. (Tr. 44). Before that, Owens worked as a corrections officer for around three months. (Tr. 45).

Owens was self-employed as a chiropractor for twenty years, but sold his practice when he turned 50. (Tr. 45). He was only working a few hours a week towards the end of his chiropractic practice. (Tr. 45-46).

Denise Weaver, the vocational expert, testified:

The ALJ assumed an individual of Owens' age, education, and past work experiences, who could perform medium work, could occasionally reach overhead with the right and left arm, who could never climb ladders, ropes, or scaffolds, who could occasionally stoop, kneel and crawl, never be exposed to unprotected heights, moving mechanical parts, and never operate a motor vehicle as a job duty. (Tr. 56). This hypothetical individual would not be able to perform Owens' past work because those jobs involved overhead reaching. (Tr. 56). However, such an

4

individual would be able to perform the following other jobs: kitchen helper, medium strength; laundry laborer, medium strength; or stubber, medium strength. (Tr. 57). If this individual could only perform light work, then the individual could perform the following jobs: folding machine operator, light strength; garment sorter, light strength; routing clerk, light strength. (Tr. 57).

If the person in the original hypothetical performed work at the medium work level, was limited to simple routine tasks and simple work-related decisions, and could have only occasional interaction with supervisors and coworkers and no interaction with the public, then such an individual could still perform all of the medium level work positions (kitchen helper, laundry laborer, or stubber). If the same restrictions were imposed on the hypothetical individual at light level work, then that person would still be able to perform all of the light level work positions (folding machine operator, garment sorter, routing clerk). If either the individual at medium or at light level would be off task for twenty percent (20%) of their workday, then that individual would not be able to perform any jobs in the national economy. (Tr. 58). Likewise, if that person were absent at least three to four days per month, then that individual would be unable to perform any of the listed occupations. (Tr. 58).

## B.    Medical Evaluations

A February 10, 2015 x-ray of Owens' cervical spine indicated mild cervical degenerative disc disease and spondylosis. (Tr. 374). A CT scan on February 10, 2015 showed no acute intracranial bleed or evidence of skull fracture. (Tr. 375). On February 12, 2015, Owens saw Gregory Henry, D.O. at the Hannibal Regional Medical Group. (Tr. 427-29). Owens complained of pain and photophobia. He was prescribed Vicodin and physical therapy. Gene P. Smith, D.O., Owens' family physician, saw Owens on February 23, 2015. Owens complained of

headaches and blurred vision after his work injury. (ECF No. 337). Dr. Smith indicated Owens could return to work on February 23, 2015, only weeks after Owens' injury. (Tr. 335).

On April 15, 2015, a cervical spine MRI on Owens showed mild cervical spondylosis. (Tr. 376). A electromyography and nerve conduction report showed evidence of a right median sensory neuropathy. (Tr. 380). The abnormality was consistent with a mild right median compressive neuropathy at the flexor retinaculum, i.e., carpal tunnel syndrome. (Tr. 380).

An EEG on July 2, 2015 was normal.

At a follow up visit with Dr. Wice on August 11, 2015, Owens reported feeling better and stopped his narcotics and cyclobenzaprine.

In April 2015, Owens was seen by Brett Hosley, D.O. Dr. Hosley noted that Owens' responses to reflex testing was "quite exaggerated." Dr. Hosley concluded some of Owens' history and examinations were inconsistent at times. (Tr. 387-90).

On November 24, 2015, Dr. Robert Fucetola, Board Certified Clinical Neuropsychologist, performed an independent neurophysical evaluation on Owens. (Tr. 553-63). Dr. Fucetola could not find credible evidence of cognitive impairment in Owens resulting from his head trauma sustained in February of 2015. Dr. Fucetola found "[t]here was strong evidence of deliberate exaggeration/fabrication of cognitive impairment per multiple performance validity tests." Dr. Fucetola found Owens performed in an invalid manner in memory testing and that his response latencies were prolonged, which reflected poor effort. Dr. Fucetola also noted Owens had a very low score of 18 on the Mini Mental Status Examination (MMSE), which was inconsistent with his normal score of 29 from Dr. Hosley's previous tests on Owens. (Tr. 387, 562). Dr. Fucetola determined Owens presented no justification for his alleged work-related impairments from a cognitive or neuropsychological standpoint. (Tr. 22, 562).

On December 9, 2015, Dr. David M. Peeples, Neurologist, performed an independent medical evaluation of Owens. (Tr. 331-33). Dr. Peeples found that Owens was not a "credible historian." Dr. Peeples stated that Owens suffered a mild concussion—at most—from his accident and the degree of his reported residual symptoms was excessive. Dr. Peeples discerned that Owens had no limiting brain injury and that he was capable of working.

On January 20, 2016, Owens was seen by Cole Scherder, M.D., for treatment of his upper back, lower back, neck, tingling feeling in his left leg and temperature dysregulation. (Tr. 569). Dr. Scherder increased Owens' dose of Gabapentin from 300 mg to 900 mg and continued Norco for breakthrough pain. (Tr. 569).

On August 16, 2016, Dr. Scherder found that Owens' pain was under fair control with Norco. Tr. 643).

On September 16, 2016, Dr. Scherder treated Owens for chronic pain. (Tr. 638-39).

On November 18, 2016, Dr. Scherder treated Owens, who was doing "ok" with methotrexate and some aches and pains improved. (Tr. 633). He continued to have a neck pain and left hand numbness.

On December 16, 2016, Owens saw Dr. Scherder. (Tr. 632). Owens stopped methotrexate, continued Norco. Owens declined seeing ortho or pain management.

On January 20, 2017, Owens saw Dr. Scherder with complain of a pain scale of 7 for his neck. (Tr. 627-28). Owens continued to take Diclofenac and Norco for his pain.[2]

---

[2] Diclofenac is a nonsteroidal anti-inflammatory drug (NSAID) used to treat mild-to-moderate pain, and helps to relieve symptoms of arthritis (eg, osteoarthritis or rheumatoid arthritis), such as inflammation, swelling, stiffness, and joint pain. https://www.mayoclinic.org/drugs-supplements/diclofenac-oral-route/description/drg-20069748 (last visited January 11, 2019). Norco is a combination medication is used to relieve moderate to severe pain. It contains an opioid(narcotic) pain reliever (hydrocodone) and a non-opioid pain reliever (acetaminophen). https://www.webmd.com/drugs/2/drug-63/norco-oral/details (last visited January 11, 2019).

On February 23, 2017, Dr. Scherder filled out Physical Residual Functional Capacity Questionnaire for Owens. (Tr. 664-667). Dr. Scherder indicated that Owens could lift 10 pounds frequently, 20 pounds occasionally, and 50 pounds rarely. Dr. Scherder stated that Owens' pain was severe enough to frequently interfere with his attention and concentration needed for simple work tasks. Dr. Scherder estimated that Owens would be absent 3-4 times per month as a result of his impairments. Dr. Scherder did not describe any other limitations that would affect Owens' ability to work at any job on a full-time basis.

## IV.    Legal Standard

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities ... ." *Id.* "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent claimant from doing past relevant work.[3] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008); *see also Eichelberger*, 390 F.3d at 590-91; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. *Id.*; 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step 5.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. *Id.*; *see also* 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national

---

[3] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Id.*; *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

This Court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

## V.    Discussion

### A.    Social Security Ruling 16-3p

Owens argues that the ALJ committed reversible error by failing to comply with Social Security Ruling (SSR) 16-3p. SSR 16-3p provides the administration "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual. A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p also identifies factors the administration uses to evaluate the intensity, persistence and limiting effects of an individual's symptoms. These factors include:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

In this case, the ALJ stated that he found:

the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have

been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with objective medical and other evidence.

(Tr. 20). Owens argues that his testimony regarding his level of pain and its effects on his functional abilities warranted a finding of disability. Further, Owens asserts the ALJ did not consider Owens' work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions. (ECF No. 16 at 9).

The Court, however, holds that the ALJ conducted a proper credibility analysis, which supported the resulting RFC assessment. The ALJ gave proper credit to three different medical professionals who discerned Owens exaggerated his symptoms or put forth inconsistent effort. (Tr. 21-22). First, the ALJ discussed the April 2015 report of Dr. Hosley. Dr. Hosley stated Owens was "difficult to evaluate" because he had a "give-away strength pattern." (Tr. 21, 387). Dr. Hosley found that Owens' strength was normal when he gave full effort. (Tr. 21, 387). Dr. Hosley reported that Owens' response to reflex testing was "quite exaggerated" in that he would "jerk his entire body and then move his limb back and forth rapidly." (Tr. 388). Second, the ALJ addressed Dr. Fucetola's November 2015 neuropsychological evaluation of Owens. Dr. Fucetola noted "[t]here was strong evidence of deliberate exaggeration/fabrication of cognitive impairment per multiple performance validity tests." (Tr. 22, 561). Dr. Fucetola stated that Owens performed in an invalid manner in memory testing and that his response latencies were prolonged, reflecting Owens' poor effort. (Tr. 561). Dr. Fucetola referenced Owens' low score of 18 on the Mini Mental Status Examination (MMSE), which was inconsistent with his normal score of 29 from when Dr. Hosley tested him earlier that year. (Tr. 387, 562).[4] The ALJ relied

---

[4] A score of 24 to 30 on the MMSE generally reflects no cognitive impairment. *See* https://www.uml.edu/docs/Mini%20Mental%20State%20Exam_tcm18-169319.pdf (visited on January 4, 2019).

upon Dr. Fucetola's determination that there was no justification for any limitations at work or in other spheres of life from a cognitive of neuropsychological standpoint. (Tr. 22, 562).

Third, the ALJ considered Dr. Peeples' December 2015 consultative medical evaluation of Owens. (Tr. 22, 330-33). Dr. Peeples found that Owens "exhibited selective memory loss." Dr. Peeples discerned that Owens did "not appear to be a credible historian" based upon his presentation, examination, and medical records. Thus, the ALJ properly relied upon these three different medical sources to determine that Owens was exaggerating his symptoms and his allegations of disabling pain and symptoms were not credible. *See, e.g., Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("The ALJ thus had ample reason to discount Dr. Jung's opinion and to rely instead on the opinions of the state agency medical consultants, which were more consistent with the medical evidence."); *Lawson v. Colvin*, 807 F.3d 962, 966 (8th Cir. 2015) (ALJ relied upon medical evidence that claimant was "overemphasizing" her symptoms).

The Court further holds that the ALJ properly considered Owens' activities that were inconsistent with the degree of impairment he alleged. The ALJ accurately observed that Owens returned to his normal daily activities shortly after his accident. *See* Tr. 20. For example, the ALJ considered Owens' testimony that he helped watch his granddaughter during the day. Tr. 20, 53. *See Van Vickle v. Astrue,* 539 F.3d 825, 828 (8th Cir. 2008) ("An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole."); *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). Moreover, Owens was largely able to provide personal care, particularly his own hygiene.

In addition, Owens' medical records did not support a finding of disability. X-ray examination of his cervical spine revealed mild degenerative disc disease and spondylosis. (Tr.

374). An MRI of his cervical spine showed mild to moderate degenerative changes. (Tr. 376, 544). An MRI examination of his brain was normal. (Tr. 377-78). Other testing showed that Owens had normal motor strength when he was cooperative with testing. (Tr. 387, 568). Owens had a normal gait. (Tr. 333, 568, 628, 631, 634, 637, 639, 642, 648). The ALJ reasonably determined Owens' fairly mild medical findings did not support Owens' allegations of disabling symptoms. (Tr. 20).

In sum, the Court holds that the ALJ did not err in the conclusion that Owens was not disabled based upon the findings of medical professionals, his daily activities, and objective medical testing. The Court defers to the ALJ's evaluation of Owens' "credibility, provided that such determination is 'supported by good reasons and substantial evidence,'" as it was in this case. *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (quoting *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The Court affirms the decision of the ALJ.

### B.    **Carpal Tunnel**

The ALJ's decision found that Owens' medical record lacks additional evidence to support his claim that he experiences significant limitations due to his carpal tunnel syndrome and, therefore, that his limitations are non-severe. (Tr. 16).

Owens argues that the ALJ failed to properly evaluate his subjective complaints and failed to find carpal tunnel to be a severe impairment. Owens cites to the record for reports that he has difficulty with small buttons and zippers, has leg and hand numbness, cannot feel his left arm, drops items, and is in constant pain. Owens claims that this case should be reversed and remanded because the hearing decision was not based on substantial evidence.

The Court holds that the ALJ properly considered the sparse medical evidence of Owens' carpal tunnel syndrome and determined that there was little support for any significant work-

related limitations. In May 2015, Dr. Smith opined that Owens had no restrictions on performing hand or wrist activities. (Tr. 523). Owens' grip strength tested as normal in 2017. (Tr. 657). Owens testified he was generally able to button a shirt and pick up items, although he may drop them. (Tr. 40-41). Other than Owens' subjective complaints, only a nerve conduction study on April 15, 2015 supported a finding of any hand impairment. (Tr. 379-80). The study found evidence of a "right median sensory neuropathy", which "may be consistent with a mild right median compressive neuropathy at the flexor retinaculum, i.e., carpal tunnel syndrome." (Tr. 380). This Court has held that mild carpal tunnel syndrome is consistent with a finding of nonseverity at step two of the sequential evaluation process. *See Cody v. Berryhill*, No. 4:17-CV-378-SPM, 2018 WL 1295627, at *4 (E.D. Mo. Mar. 13, 2018). Therefore, the Court holds that the ALJ properly considered Owens' carpal tunnel syndrome and denies Owens' request for reversal and remand.

## VI. Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**. A separate Judgment will accompany this Order.

Dated this /4th day of January, 2019.

Ronnie L. White
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE

15